Ida STROUD, as Trustee for Heirs of
Geneva Stroud, Respondent,

v.

HENNEPIN COUNTY MEDICAL
CENTER, et al., Petitioners,
Appellants,

and

Hennepin Faculty Associates,
Petitioner, Appellant.

No. C7–95–2042.

Supreme Court of Minnesota.

Dec. 19, 1996.

Michael O. Freeman, Hennepin County Attorney, Michael B. Miller, Senior Assistant County Attorney, Minneapolis, for Hennepin County Medical Center.

Gislason, Dosland, Hunter & Malecki, P.L.L.P., Anne T. Johnson, David D. Alsop, Minnetonka, for Hennepin Faculty Associates.

Gant Law Office, Jesse Gant, III, Minneapolis, for Ida Stroud.

OPINION

PAGE, Justice.

Ida Stroud (Stroud), as trustee for the heirs of Geneva Stroud, commenced this medical malpractice action against Hennepin County Medical Center (HCMC) and Hennepin Faculty Associates (HFA) as a result of their alleged failure to timely diagnose and treat a subarachnoid hemorrhage [1] suffered by Geneva Stroud. The district court granted summary judgment in favor of HCMC and HFA and dismissed Stroud's lawsuit because her affidavit of expert identification failed to meet the requirements of Minn.Stat. § 145.682, subd. 4 (1996). The court of appeals reversed the district court's grant of summary judgment, but affirmed [2] in all other respects. We now reverse the court of appeals and reinstate the summary judgment dismissing Stroud's lawsuit.

On January 1, 1994, 69-year-old Geneva Stroud was seen in the Emergency Room at HCMC, complaining of a headache and neck pain. She was examined and sent home with a prescription for an antibiotic for a urinary tract infection. Geneva Stroud was again seen at HCMC on January 4, 1994, complaining of persistent headaches, nausea, vomiting, blurred vision, and sensitivity to light. Again, she was examined, but not admitted. Geneva Stroud was next seen at HCMC on January 8, 1994, and was admitted after being diagnosed as having suffered a subarachnoid hemorrhage. She remained in the hospital until she died on January 24, 1994. Her death certificate listed the immediate cause of death as a "pulmonary embolism due to or as a consequence of deep vein thrombosis due to or as a consequence of subarachnoid hemorrhage."

Stroud commenced this action by serving a summons and complaint on HCMC and HFA on July 27, 1994.[3] Pursuant to Minn.Stat.

---

1. A subarachnoid hemorrhage is a bleeding into the space between the arachnoid and the pia mater. The arachnoid is the middle of three membranes which cover the brain and the spinal cord. The pia mater is the innermost of the three membranes.

2. At the same time it granted HCMC and HFA's motion for summary judgment, the district court denied a motion brought by Stroud seeking a default judgment. The court of appeals affirmed the district court's denial of Stroud's motion for the default judgment. The parties have not sought review of that issue before this court.

3. On October 21, 1994, an amended complaint was served on HCMC and HFA. Amendment was permitted because Stroud's counsel had not

§ 145.682, subd. 4,[4] Stroud attached to the complaint an affidavit of expert identification by Dr. Steven Tredal, dated June 21, 1994. The affidavit was Stroud's attempt to meet the requirements of Minn.Stat. § 145.682, subd. 4. Dr. Tredal's statement on the issue of causation, found in paragraph 7 of the affidavit, reads as follows:

> 7. I, Dr. Tredal, will testify that as a result of the breach of the standard of care on 1/1/94 and 1/4/94, as discussed, there was a failure to diagnose and treat a subarachnoid hemorrhage which ultimately resulted in a complicated hospital course and death of the Plaintiff.

On September 13, 1994, HCMC served on Stroud a set of interrogatories which included an interrogatory requesting a detailed explanation of the causal relationship between its alleged deviations from the standard of care and Stroud's claimed damages. Stroud's October 6, 1994, answer to that interrogatory referred HCMC back to Dr. Tredal's June 21 affidavit. Supplemental interrogatories by HCMC were served on November 16, 1994, and included a request for the "full opinion(s) of each expert, including the factual and medical basis for each, as well as the reasons therefor." Letters were also sent by HCMC on November 29, 1994, and January 9, 1995, requesting that Stroud provide complete answers to HCMC's first set of interrogatories. The 180–day time period for meeting the requirements of Minn.Stat. § 145.682 expired on January 23, 1995. Dr. Tredal's June 21 affidavit was neither amended nor supplemented, and no other affidavits of expert identification were served on HCMC or HFA during the 180–day time period.

On March 14, 1995, HFA informed Stroud that it intended to bring a motion for summary judgment seeking dismissal of her lawsuit based on its contention that Stroud failed to provide sufficient expert disclosure with respect to causation as required by Minn. Stat. § 145.682. On March 21, 1995, HCMC, by letter, indicated to Stroud that it would bring a motion to compel answers to its supplemental interrogatories if they were not answered by the April 1 discovery cut-off date set by the district court. That same day, Stroud answered HCMC's supplemental interrogatories, again referring HCMC to Dr. Tredal's June 21 affidavit. By letter to HCMC and HFA, dated March 27, 1995, Stroud asserted that Dr. Tredal's affidavit provided a legally sufficient description of causation. On April 4, 1995, HFA noticed its motion for summary judgment. On April 11, 1995, Stroud served on HCMC an addendum to Dr. Tredal's June 21 affidavit and a new affidavit of expert identification. The addendum supplemented the causation statement in Dr. Tredal's June 21 affidavit, and the affidavit was from a newly-disclosed expert, Dr. John Tulloch. The addendum and affidavit were served more than two and a half months after the statutory 180–day time period had expired and ten days after the district court's discovery cut-off date.[5] On

---

obtained proper appointment of Stroud as trustee at the time the action was commenced on July 27th. The amended complaint was identical to the original, except for the caption indicating that the case had been refiled.

4. Minnesota Statutes section 145.682, subdivision 2(2), requires a medical malpractice plaintiff to "serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4." Subdivision 4 provides, in relevant part:

> Identification of experts to be called. (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to

testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

Failure to provide the required affidavit or answers to interrogatories in a timely manner "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." Minn.Stat. § 145.682, subd. 6.

5. Both the addendum and Dr. Tulloch's affidavit were untimely. They were not considered by the district court and will not be considered by this court.

April 12, 1995, HCMC joined HFA's motion for summary judgment.

By order dated May 12, 1995, the district court granted HCMC and HFA's motion for summary judgment and dismissed Stroud's lawsuit based on its finding that Dr. Tredal's June 21 affidavit was "so vague and imprecise that it does not meet the standards of admissibility into evidence." In addition, the district court concluded that Dr. Tredal's addendum and Dr. Tulloch's affidavit were untimely under Minn.Stat. § 145.682, subd. 4, as well as the district court's discovery cut-off date, because the action had commenced on July 27, 1994, the date of the original complaint, and not October 21, 1994, the date of the amended complaint.

The court of appeals reversed, concluding that, under *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188 (Minn.1990), Dr. Tredal's June 21 affidavit, combined with the death certificate, provided a sufficient chain of causation from which HCMC and HFA could prepare a defense. *Stroud v. Hennepin County Med. Ctr.*, 544 N.W.2d 42, 47 (Minn.App.1996). The court of appeals also concluded that, even if the affidavit was insufficient on causation, HCMC and HFA were estopped from seeking dismissal under the statute because they failed to inform Stroud of their belief that Dr. Tredal's June 21 affidavit "was insufficient under Minn. Stat. § 145.682 until late March 1995, roughly eight months after receiving" the affidavit. *Id.* at 48.

■ This case presents two questions for our review. First, whether the district court abused its discretion in dismissing Stroud's medical malpractice action because Stroud failed to provide a legally sufficient affidavit of expert identification on the issue of causation as required by Minn.Stat. § 145.682, subd. 4 (1996), and second, whether HCMC and HFA are estopped from seeking dismissal under the facts of this case. As a general rule "[a] trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion." *Sorenson*, 457 N.W.2d at 190 (citing *Dennie v. Metropolitan Med. Ctr.*, 387 N.W.2d 401, 404 (Minn.1986)). "Statutory construction, how-

ever, is a question of law and subject to de novo review on appeal." *Id.* (citing *Doe v. Minnesota State Bd. of Med. Exam'rs*, 435 N.W.2d 45, 48 (Minn.1989)). The issues presented require us to determine whether the district court abused its discretion in dismissing Stroud's lawsuit.

■ The Minnesota legislature enacted Minn.Stat. § 145.682 for the purpose of eliminating nuisance medical malpractice lawsuits by requiring plaintiffs to file affidavits verifying that their allegations of malpractice are well-founded. *Oslund v. United States*, 701 F.Supp. 710, 712 (D.Minn.1988). *See also Parker v. O'Phelan*, 414 N.W.2d 534, 537 (Minn.App.1987), *aff'd by equally divided court*, 428 N.W.2d 361 (Minn.1988). Specifically, as it relates to this case, the statute requires a plaintiff to serve upon the defendant, within 180 days of commencing the action, an affidavit by the plaintiff's attorney that identifies all expert witnesses to be called at trial on the issue of causation, as well as "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Minn.Stat. § 145.682, subd. 4. Answers to interrogatories may substitute for the affidavit if properly served on the defendant within 180 days of the commencement of the lawsuit. *Id.* Subdivision 6 of section 145.682 mandates that, upon the defendant's motion, when a plaintiff fails to comply with the 180–day requirement, each cause of action for which expert testimony is necessary to establish a prima facie case must be dismissed with prejudice.

We previously addressed the requirements of Minn.Stat. § 145.682 in *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188 (Minn.1990). We indicated that it is not enough for the plaintiff's affidavit of expert identification to simply repeat the facts in the hospital or clinic record. *Id.* at 192. "The affidavit should set out how the expert will use those facts to arrive at opinions of malpractice and causation." *Id.* We noted that in cases commencing after the filing of the *Sorenson* opinion, plaintiffs would be expected to set forth, by affidavit or answers to interrogatories, specific details concerning their experts' expected testimony, including

the applicable standard of care, the acts or omissions which the plaintiff alleges resulted in a violation of the standard of care, and an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages. *Id.* at 193.

■ In light of *Sorenson*, it is clear that Dr. Tredal's June 21 affidavit did not meet the requirements of the statute.[6] The affidavit provides only broad, conclusory statements as to causation. The affidavit does not provide an outline of the chain of causation between the alleged violation of the standard of care and the claimed damages. According to Geneva Stroud's death certificate, her immediate cause of death was a pulmonary embolism, not a subarachnoid hemorrhage. Dr. Tredal's June 21 affidavit does not connect Geneva Stroud's pulmonary embolism to the delay in diagnosing the subarachnoid hemorrhage; rather, Dr. Tredal simply opines that the delay in diagnosis caused a "complicated hospital stay."

Stroud urges us to consider Dr. Tredal's June 21 affidavit in combination with Geneva Stroud's death certificate. The affidavit, read in conjunction with the death certificate, is not a substitute for an expert medical opinion setting forth in detail the causal connection between HCMC's and HFA's conduct and Geneva Stroud's death because it does not provide any explanation of how that conduct led to her death. Further, utilizing the death certificate to satisfy the causation requirement without an adequate expert medical opinion is at odds with *Sorenson*'s requirement that a plaintiff may not simply repeat facts in the hospital record. *See Sorenson*, 457 N.W.2d at 192.

Stroud's failure to provide an adequate medical opinion as to causation is especially troubling because Stroud was on notice that at least HCMC considered Dr. Tredal's June 21 affidavit inadequate and because Stroud had ample opportunity to provide a legally sufficient expert affidavit on causation prior to the expiration of the 180–day statutory

time period. In September 1994, HCMC served an interrogatory on Stroud seeking a detailed answer with respect to "the causal relationship of the negligence * * * to the claimed injuries or damage." Stroud's response to that interrogatory was to refer HCMC to Dr. Tredal's June 21 affidavit. HCMC served supplemental interrogatories on Stroud in November 1994. The supplemental interrogatories requested that Stroud provide the factual and medical basis for each opinion of each medical expert to testify at trial. Stroud responded to the supplemental interrogatories on March 21, 1995, and again referred HCMC to Dr. Tredal's June 21 affidavit.

We conclude that the district court did not abuse its discretion in granting HCMC and HFA's motion for summary judgment and dismissing Stroud's lawsuit. Therefore, we reverse the court of appeals.

■ While our resolution of the issue regarding Stroud's compliance with the requirements of Minn.Stat. § 145.682 is dispositive of this case, we feel compelled to address the court of appeals' treatment of the estoppel issue. In resolving this issue, the court of appeals concluded that because HCMC failed to bring a motion to compel answers to its interrogatories seeking expert disclosure with respect to causation before expiration of the 180–day statutory time period, HCMC was estopped from asserting its right to seek dismissal under the statute. *Stroud*, 544 N.W.2d at 48.[7] The court of appeals, in reaching this conclusion, relied on *Sorenson*, which held that when a party withdraws a motion to compel answers to interrogatories seeking disclosure under Minn. Stat. § 145.682, the opposing party may rely on that withdrawal as signifying "their acceptance of [the] answers in satisfaction of the requirements of section 145.682." *Id.* However, nothing in our prior cases, Minn. Stat. § 145.682, or the facts of this case suggests the result reached by the court of

---

6. We note that while interrogatory answers could satisfy the statute's disclosure requirements, Stroud's answers to HCMC's interrogatories simply referred HCMC to Dr. Tredal's June 21 affidavit.

7. For purposes of the estoppel issue, the court of appeals treated HCMC and HFA the same despite the fact that HFA did not serve any interrogatories on Stroud.

appeals. In fact, such a conclusion is clearly contrary to the plain language of Minn.Stat. § 145.682, subd. 6, which mandates dismissal, upon motion, after expiration of the 180–day period for plaintiff's failure to comply with Minn.Stat. § 145.682, subd. 4. The fact that a party may rely on the opposing party's withdrawal of a motion to compel answers to interrogatories as signifying "[the party's] acceptance of [the] answers in satisfaction of the requirements of section 145.682," does not mean that a party can rely on the opposing party's failure to bring a motion to compel as signifying the same thing where there is no obligation on the opposing party to bring such a motion.

Reversed and summary judgment reinstated.

GARDEBRING and BLATZ, JJ., took no part in the consideration or decision of this case.