**Kathleen M. ANDERSON, Respondent,**

v.

**Dr. Setti RENGACHARY,**
**petitioner, Appellant.**

No. C7–98–1987.

Supreme Court of Minnesota.

March 16, 2000.

Rehearing Denied May 3, 2000.

David Hutchinson, Kyle M. Thomas, Geraghty, O'Loughlin & Kenney, P.A., Saint Paul, for appellant.

Paul A. Sortland, Sortland Law Office, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Appellant Setti Rengachary, M.D., appeals from the Minnesota Court of Appeals' reversal of the district court's order denying respondent Kathleen Anderson's request for reconsideration of the dismissal of her medical malpractice suit against appellant. Ms. Anderson served an affidavit of expert identification as required by Minn.Stat. § 145.682, subd. 4 (1998) and, after the 180–day statutory deadline expired, Dr. Rengachary moved to dismiss the suit. The district court concluded that Ms. Anderson had not submitted a sufficient affidavit of expert identification and pursuant to Minn.Stat. § 145.682, subd. 6 (1998) granted Dr. Rengachary's motion to dismiss. Ms. Anderson requested reconsideration but the district court declined to reconsider its order or grant her an extension to comply with the statutory requirements. The court of appeals reversed and remanded, directing the district court to allow Ms. Anderson 30 days to submit a supplemental affidavit. *See Anderson v. Rengachary*, 591 N.W.2d 511, 514 (Minn. App.1999). We reverse the court of appeals and affirm the district court's order.

Dr. Rengachary performed an anterior cervical diskectomy and fusion on Ms.

Anderson on July 5, 1995. On July 3, 1997, Ms. Anderson commenced a lawsuit against Dr. Rengachary alleging that his negligence caused a severed vagus nerve and swelling of her esophagus and thyroid. On October 1, 1997, Ms. Anderson served the affidavit of expert review required by Minn.Stat. § 145.682, subd. 3 (1998)[1] and, on December 12, 1997, the affidavit of expert identification required by Minn. Stat. § 145.682, subd. 4. In the affidavit of expert identification, Ms. Anderson's anticipated expert witness, Richard S. Goodman, M.D., stated in part:

6. I agree there was a deviation from the standard of care provided to this patient which caused the patient to have postoperative dysphasia [sic] of undetermined etiology. Also, it appears, based upon the medical record, that there was significant trauma to the esophagus. The standard of care is that esophageal trauma should be avoided during surgery of this type.

7. I note in the records of Dr. Thomas C. Bagnoli, dated October 12, 1995, that he suggested that one of the possibilities for the dysphagia suffered by Kathleen Anderson is that, possibly during surgery, or afterwards, during the time she was in the surgical collar, that the plaintiff sustained an injury to the vagus nerve. If this supposition of Dr. Bagnoli was accurate, that the vagus nerve suffered injury during surgery, or in the resulting aftercare, this would also be a deviation from the standard of care as the surgeon should make certain that such trauma to the vagus nerve should not occur, either during or in aftercares [sic] following such surgery.

After the 180–day statutory deadline expired, Dr. Rengachary moved for dismissal with prejudice pursuant to Minn.Stat. § 145.682, subd. 6 (1998), arguing Ms. Anderson failed to provide a sufficient affidavit of expert identification. The district court granted his motion to dismiss with prejudice and explained its reasoning as follows:

Here, Plaintiff's expert states that the standard of care is that "esophageal trauma should be avoided during surgery" and "trauma to the vagus nerve should not occur, either during or in aftercare[s] following such surgery." He describes the acts or omissions that violate the standard as "esophageal trauma" and, based on the opinion of another doctor, operative or postoperative damage to the vagus nerve. He concludes that these violations "caused the patient to have postoperative dysphasia of undetermined etiology." The inclusion of this phrase "of undetermined etiology" is inconsistent with the construction of a chain of causation. It says that the cause of Plaintiff's alleged injuries is unknown. The statute requires a connection between the violation and the injury. The expert has not supplied that connection here.

Ms. Anderson then sent to the court a Rule 115.11 request to bring a motion for reconsideration, arguing that the affidavit was sufficient but also requesting a 30–day extension to supplement the affidavit. *See* Minn. Gen. R.P. 115.11. The district court denied this request.

Ms. Anderson appealed and the court of appeals reversed and remanded. *See Anderson*, 591 N.W.2d at 514. The court of appeals concluded that the district court abused its discretion in denying Ms. Anderson's request for reconsideration because the affidavit represented a "good faith effort to comply with the disclosure

---

1. Ms. Anderson served with the complaint an affidavit of her attorney explaining he was unable to obtain expert review prior to commencing the case due to the statute of limitations. He stated in the October 1 affidavit that he "reviewed the facts of this case with an expert whose qualifications provide a rea-sonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, * * * the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff."

requirements." *Id.* at 513. In reaching this conclusion, the court considered that Ms. Anderson did not receive notice of the insufficiency of the affidavit prior to the expiration of the statutory 180–day deadline and that we had "directed district courts to consider less drastic alternatives to dismissal when the plaintiff has identified experts and given some meaningful disclosure of their testimony." *Id.* at 513–14 (citing *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990)). The court of appeals reversed and remanded, ordering the district court to allow Ms. Anderson 30 days to submit a supplemental affidavit.[2] *See id.* at 514. Dr. Rengachary filed a petition for further review and we granted review of the court of appeals' opinion.

■ We will reverse a district court's dismissal of a suit pursuant to Minn.Stat. § 145.682 only if the district court abused its discretion. *See Sorenson*, 457 N.W.2d at 190. Examining the district court's order denying Ms. Anderson's request for reconsideration in light of this standard, we address the sufficiency of her affidavit of expert identification. We then consider her request for a 30–day extension to submit a supplemental affidavit.

## I.

■ In a medical malpractice case where "expert testimony is necessary to establish a prima facie case"[3] the plaintiff must meet two requirements. Minn.Stat. § 145.682, subd. 2 (1998). First, the plaintiff must serve with the complaint an affidavit of the plaintiff's attorney stating that the attorney has reviewed the case with an expert and that in the expert's opinion the defendant injured the plaintiff due to a deviation from the standard of care. *See* Minn.Stat. § 145.682, subds. 2, 3. If the statute of limitations prevents expert review prior to serving the complaint, the plaintiff must attach to the complaint an affidavit of his or her attorney explaining these circumstances and serve the affidavit of expert review within 90 days. *See* Minn.Stat. § 145.682, subd. 3.

Second, the plaintiff must serve an affidavit identifying the experts who will testify at trial, the substance of their testimony, and a summary of the grounds for their opinions within 180 days of the commencement of the suit. *See* Minn.Stat. § 145.682, subds. 2, 4. Regarding this affidavit of expert identification the statute provides:

> The affidavit * * * must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

**2.** On May 13, 1999, Ms. Anderson served a supplemental affidavit of Dr. Goodman on Dr. Rengachary.

**3.** Medical malpractice cases generally require expert testimony and a plaintiff has a significant burden of proof:
> To establish a prima facie case of medical malpractice, a plaintiff must introduce expert testimony on the standard of care required from a physician under the circumstances and on defendant's departure from that standard. Furthermore, plaintiff must

> present expert testimony showing that defendant's action or inaction was a direct cause of the [injury].
> * * * *
> * * * Testimony must show that it was more likely that [injury] occurred from defendant's negligence than from anything else.
> *Walton v. Jones*, 286 N.W.2d 710, 714–15 (Minn.1979) (citations omitted); *see also Sorenson*, 457 N.W.2d at 191.

Minn.Stat. § 145.682, subd. 4(a) (1998). The parties may agree to extend the 180–day time limit or the court may extend it for good cause. *See* Minn.Stat. § 145.682, subd. 4(b) (1998). Otherwise, "[f]ailure to comply with [this requirement] results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." Minn.Stat. § 145.682, subd. 6.

In *Sorenson* we gave notice to future plaintiffs of our interpretation of Minn. Stat. § 145.682, subd. 4. The defendants in *Sorenson* served with their answer interrogatories seeking an explanation of the basis for plaintiff's medical malpractice claim and the plaintiff subsequently served an affidavit of a physician who would testify as an expert witness at trial. 457 N.W.2d at 190. The defendants then brought a motion to compel plaintiff to answer the interrogatories. *See id.* The plaintiff provided a supplemental affidavit of this physician that same day and later served answers to the interrogatories upon the defendants. *See id.* Subsequent to the service of plaintiff's interrogatory answers, the defendants withdrew their pending motion to compel and, after the 180 days expired, brought a motion for summary judgment. *See id.* Due to these circumstances, we concluded that the defendants were estopped from seeking dismissal pursuant to Minn.Stat. § 145.682. *See id.* at 193. We explained, however, our expectations regarding affidavits of expert identification and the circumstances under which dismissal pursuant to Minn. Stat. § 145.682 is warranted:

> In future cases, plaintiffs will be expected to set forth by affidavit or answers to interrogatories, specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them.
>
> In deciding whether a procedural dismissal should be granted, the district court should carefully evaluate the degree of prejudice to the defendant caused by the inadequate disclosures. In borderline cases, where counsel for a plaintiff identifies the experts who will testify and give [sic] some meaningful disclosure of what the testimony will be, there may be less drastic alternatives to a procedural dismissal.

*Id.* (citation omitted).

We again addressed Minn.Stat. § 145.682, subd. 4 in *Stroud v. Hennepin County Medical Center,* 556 N.W.2d 552 (Minn.1996). In that case the plaintiff, as trustee for the heirs of the deceased, provided an affidavit of expert identification which stated in pertinent part, "I, Dr. Tredal, will testify that as a result of the breach of the standard of care * * * there was a failure to diagnose and treat a subarachnoid hemorrhage which ultimately resulted in a complicated hospital course and death of the [deceased]." *Id.* at 554. We affirmed the district court's dismissal of the plaintiff's suit because the affidavit failed to "provide an outline of the chain of causation between the alleged violation of the standard of care and the claimed damages." *Id.* at 556.

In *Lindberg v. Health Partners, Inc.,* we also affirmed the dismissal of a suit pursuant to Minn.Stat. § 145.682. 599 N.W.2d 572, 575–79 (Minn.1999). We concluded that the affidavit of expert identification served by the plaintiff contained only "broad and conclusory statements as to causation" and thus did not satisfy the statutory requirements.[4] *Id.* at 578. We

---

4. The affidavit set forth the following statements regarding causation:

Based upon a reasonable degree of medical certainty, it is more probable than not, that if, among other things, Debra Lindberg had been instructed to seek medical treatment at the time of her phone call on the morning of March 28, 1994, Lukas Stewart Lindberg would not have died.

Based upon a reasonable degree of medical certainty, Lukas Stewart Lindberg died as a result of the negligent and careless conduct

further explained the extent of disclosure required by Minn.Stat. § 145.682, subd. 4:

The statute requires far more information than simply identification of the expert intended to be called at trial or a "general disclosure" as respondent argues, and non-affidavit materials, absence of prejudice to defendant, failure of defendant to prove plaintiff's claim is frivolous or failure of defendant to alert plaintiff to the inadequacy of the affidavit of expert identification will not excuse or justify an affidavit of expert identification falling short of the substantive disclosure requirement. The statute provides for no such exception and it is not for the courts to read into a clear statutory scheme something that plainly is not there.

*Id.* Significantly, we filed our *Lindberg* opinion after the court of appeals and the district court addressed this matter. The *Sorenson* and *Stroud* opinions, however, offered clear guidance to lower courts as to the requirements of Minn.Stat. § 145.682, subd. 4.

■ The district court correctly concluded Dr. Goodman's affidavit of expert identification was insufficient because it did not clearly set forth the standard of care, the defendant's acts or omissions that allegedly violated that standard, and the chain of causation between these violations and the plaintiff's injury. In his affidavit Dr. Goodman addressed alleged injuries to both the esophagus and the vagus nerve. As to the esophagus, Dr. Goodman defined the standard of care by stating "esophageal trauma should be avoided during surgery of this type." He did not state what particular measures a physician should take to avoid such trauma. He also failed to describe the defendant's acts or omissions that allegedly violated the standard of care and caused this injury. Regarding causation, Dr. Goodman stated "there was a deviation from the standard of care pro-

vided to this patient which caused the patient to have postoperative dysphasia [sic] of undetermined etiology." The phrase "undetermined etiology" suggests that the cause of Ms. Anderson's injury is unknown and perhaps unrelated to the surgery performed by Dr. Rengachary. Thus, Dr. Goodman failed to adequately describe the alleged negligence on the part of Dr. Rengachary and its relationship to Ms. Anderson's injury.

Dr. Goodman also discussed a possible injury to the vagus nerve. He explained that the standard of care requires avoiding injury to the vagus nerve but again failed to describe the actions a physician should take to avoid such injury. He also did not identify the acts or omissions of Dr. Rengachary that violated the standard of care or even state definitively that the vagus nerve was in fact injured. Dr. Goodman made no attempt to outline a chain of causation resulting in injury to the vagus nerve. Because this affidavit clearly fails to fulfill the statutory requirements, the district court did not abuse its discretion in dismissing Ms. Anderson's suit and denying her request for reconsideration.

## II.

■ In her Rule 115.11 letter requesting reconsideration, Ms. Anderson argued that Dr. Goodman's affidavit was sufficient but also requested a 30–day extension to submit a supplemental affidavit. The court of appeals concluded that the district court abused its discretion in denying this request because Ms. Anderson's affidavit identified the experts who would testify and provided "some meaningful disclosure" of their testimony. *Anderson,* 591 N.W.2d at 514. The court relied on *Sorenson* to conclude that a "less drastic" alternative was appropriate. *Id.* In *Sorenson,* we stated in dicta that "borderline cases" may require a remedy less drastic than dismissal with prejudice. 457 N.W.2d at 193. We

of the Defendants and/or their agents and employees, including midwife Sharon Nichols and Donne Mathiowitz.

*Lindberg,* 599 N.W.2d at 575.

conclude, however, in contrast to the first concurrence/dissent, that this appeal hardly exemplifies a borderline case because the affidavit has serious deficiencies and does not provide any meaningful disclosure regarding how the standard of care was violated or what that standard required.

The court of appeals based its holding in part on the lack of notice to Ms. Anderson prior to the 180–day deadline that the affidavit may not satisfy the statutory requirements. The court distinguished this case from others in which the plaintiff received such notice. *See Anderson,* 591 N.W.2d at 513 n. 2. The previous decisions of this court, however, provided some degree of notice to Ms. Anderson. As described above, both *Sorenson* and *Stroud* state that an affidavit of expert identification must set forth the standard of care, the acts or omissions violating that standard, and the chain of causation.

Further, we did not suggest in either *Sorenson* or *Stroud* that a defendant must notify a plaintiff of the insufficiency of an affidavit. In *Stroud* we noted that the plaintiff's failure to submit a supplemental affidavit was "especially troubling" because the defendant had put the plaintiff on notice that it considered the affidavit insufficient. 556 N.W.2d at 556. This reasoning, however, would not support the conclusion that dismissal is warranted only where the plaintiff has such notice. In fact, we rejected the argument that the defendant's failure to bring a motion to compel answers to interrogatories estopped the defendant from seeking dismissal. *See id.* at 556–57. In *Sorenson,* we held that the defendant was estopped from bringing a motion for dismissal because it withdrew its motion to compel answers to interrogatories subsequent to service of plaintiff's supplemental affidavit and interrogatory answers. 457 N.W.2d at 193. The defendant in *Sorenson* did more than fail to notify the plaintiff of the insufficiency of these disclosures; the defendant acted in a manner suggesting it did not object to them. Additionally, in *Lind-*

*berg* we noted, "[F]ailure of defendant to alert plaintiff to the inadequacy of the affidavit of expert identification will not excuse or justify an affidavit of expert identification falling short of the substantive disclosure requirement." 599 N.W.2d at 578.

No language in Minn.Stat. § 145.682 suggests that a plaintiff is entitled to notice of the insufficiency of the affidavit prior to the expiration of the 180 days. In effect, the court of appeals has created a good-faith exception to the statute of uncertain proportions. The reasoning underlying the court of appeals' opinion would justify an extension of the time limit in any number of cases where the plaintiff serves an insufficient affidavit.

■ A plaintiff required to file an affidavit of expert identification pursuant to Minn.Stat. § 145.682, subd. 4 does have an opportunity to obtain an extension of the 180–day time limit. The statute provides that a plaintiff may extend the time limit by agreement with the defendant or by order of the court for good cause. *See* Minn.Stat. § 145.682, subd. 4(b). Further, we have held that "the statute must be read in conjunction with Minn. R. Civ. P. 6.02 * * *." *Stern v. Dill,* 442 N.W.2d 322, 324 (Minn.1989); *see also Parker v. O'Phelan,* 414 N.W.2d 534, 537 (Minn.App. 1987), *aff'd without opinion,* 428 N.W.2d 361 (Minn.1988). Rule 6.02 states:

> When by statute, by these rules, by a notice given thereunder, or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *.

Minn. R. Civ. P. 6.02. Excusable neglect exists where the plaintiff (1) has a reasonable suit on the merits, (2) has a reasonable excuse for failure to comply with time limit set forth by Minn.Stat. § 145.682, subd. 2, (3) acted with due diligence after receiving notice of the time limit, and (4) no substantial prejudice results to the defendant. *See Bellecourt v. United States*, 784 F.Supp. 623, 639 (D.Minn.1992) (citing *Parker*, 414 N.W.2d at 537), *aff'd in part, dismissed in part*, 994 F.2d 427, 429 (8th Cir.1993).

Ms. Anderson did not bring a motion before the district court for an extension of the 180–day time limit pursuant to Rule 6.02 or otherwise raise the issue of excusable neglect. Thus, we may not consider the issue on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Regardless, the record does not support a finding of excusable neglect. In her letter requesting reconsideration, Ms. Anderson did not outline any circumstances preventing her from serving a more detailed affidavit within the time limit but rather argued that Dr. Goodman's affidavit satisfied the statutory requirements. Further, contrary to Ms. Anderson's argument, the failure of her attorney to submit an adequate affidavit is not the sort of inadvertence for which we would excuse her.

■ Our application of Minn.Stat. § 145.682 does not represent an unconstitutional redrafting of the statute as Ms. Anderson argues but rather gives effect to its plain meaning.[5] When a statute is unambiguous, we will not examine the legislature's intent. *See Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

The language of Minn.Stat. § 145.682 is so plain and clear that it leaves little doubt as to the result here. Thus, we hold that the district court did not abuse its discretion in denying Ms. Anderson's request for reconsideration of the dismissal of her suit and for an additional 30 days to comply with the statutory requirements.

Reversed.

PAUL H. ANDERSON, J. (concurring in part, dissenting in part).

I agree with the majority's conclusion that Dr. Goodman's affidavit is deficient. *See* Minn.Stat. § 145.682, subd. 4 (1998).[1] But I disagree with the majority's decision to reverse the court of appeals by holding that the district court properly denied re-

**5.** Ms. Anderson also argued in her brief to this court that Minn.Stat. § 145.682 is unconstitutional because it denies her equal protection and due process. Her attorney conceded at oral argument that as she did not raise this issue at the district court it is not properly before this court. *See Thiele*, 425 N.W.2d at 582.

**1.** Minnesota Statutes § 145.682, subd. 4, provides as follows:

Subd. 4. (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

(b) The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses.

(c) In any action alleging medical malpractice, all expert interrogatory answers must be signed by the attorney for the party responding to the interrogatory and by each expert listed in the answers. The court shall include in a scheduling order a deadline prior to the close of discovery for all parties to answer expert interrogatories for all experts to be called at trial. No additional experts may be called by any party without agreement of the parties or by leave of the court for good cause shown.

Minn.Stat. § 145.682, subd. 4 (1998).

spondent Kathleen Anderson's request for a 30–day extension to file a supplemental affidavit.

As I have previously stated, I do not find the application of Minn.Stat. § 145.682 (1998) to be as "uncomplicated and unambiguous" as does the majority. *See Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 579 (Minn.1999) (Anderson, Paul H., J., concurring specially). Nor do I conclude, as the majority does, that the statute's language is "so plain and clear" that it leaves little doubt about the result in this case. Rather, I conclude that dismissal of Anderson's action at this stage of the proceedings is inconsistent with both the public policy concerns addressed by the legislature in enacting section 145.682 and judicial precedent expressed in case law. The court of appeals got it right when it stated:

> directing the district court to allow Anderson to supplement her affidavit would best serve the intent of the legislature, the judicial policy favoring disposal of cases on their merits, and the admonition of the *Sorenson* court that alternatives less drastic than dismissal be considered when the plaintiff has identified experts and given some meaningful disclosure of their testimony.

*Anderson v. Rengachary*, 591 N.W.2d 511, 514 (Minn.App.1999).

The majority focuses much of its analysis on the question of Dr. Rengachary's failure to give any notice of the affidavit's deficiencies until after expiration of the 180–day statutory period and then concludes that such failure does not warrant an extension of time to file a supplemental affidavit. But the critical question in this case has a much broader focus. This broader focus is required because Dr. Goodman's affidavit fulfilled most of the primary requirements of section 145.682, subd. 4. The affidavit was filed in a timely manner, it identified the expert likely to testify at trial on malpractice and causation, and it demonstrated a good-faith effort to comply with the disclosure requirements. This good faith effort is demonstrated by the fact that we can conclude from the affidavit that the problems with Anderson's vagus nerve were caused by the surgery or aftercare and that such problems should not normally result from either surgery or aftercare. More particularly, we can ascertain from the affidavit that: (1) Anderson had postoperative dysphagia, (2) there was significant trauma to her esophagus, (3) a possible cause for the dysphagia was an injury to the vagus nerve either during surgery or during aftercare when Anderson was in a surgical collar, (4) trauma to the vagus nerve should not have occurred either during surgery or during aftercare, and (5) when such trauma occurs, it is a deviation from the standard of care.

I concede that Dr. Goodman's affidavit is inartfully drafted and flawed, but it is not so flawed that Anderson's action must be dismissed at this stage of the proceedings. Such a harsh consequence is not mandated by statute or case law. *See* Minn.Stat. § 145.682, subd. 4(b) (1998); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn.1990). Nor is such a consequence consistent with our recognition that "a primary objective of the law is to dispose of cases on the merits." *Sorenson*, 457 N.W.2d at 192.

The majority asserts that under the abuse of discretion standard we must affirm the district court's refusal to grant an extension. Section 145.682 is a relatively recent statute, having been enacted in 1986. *See* Act of March 25, 1986, ch. 455, § 60, 1986 Minn. Laws 871–72. All of our decisions applying the statute have been rendered in the past decade. *See Lindberg*, 599 N.W.2d 572; *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552 (Minn. 1996); *Sorenson*, 457 N.W.2d 188. Our clearest direction to district courts on the exercise of their discretion was in *Sorenson* where we stated that in borderline cases when prejudice is absent, alternatives less drastic than procedural dismissal should be employed. *See Sorenson*, 457

N.W.2d at 193. I fear that by affirming this case on the grounds that there was no abuse of discretion, we will now send a message to district courts that they have no alternative but to dismiss whenever an expert affidavit required by section 145.682 is even marginally deficient. In essence, the majority's decision transforms this statute from a shield against unwarranted medical malpractice litigation into a sword that will be used to prematurely cut off actions with a "sharp but clean edge"[2] before it can be properly determined whether they should be disposed of on the merits.

GILBERT, Justice (concurring in part and dissenting in part).

I concur in the majority's opinion relating to the sufficiency of the expert's affidavit based on our recent decisions in *Sorenson v. St. Paul Ramsey Medical Center*, 457 N.W.2d 188 (Minn.1990), *Stroud v. Hennepin County Medical Center*, 556 N.W.2d 552 (Minn.1996), and *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572 (Minn.1999). However, I respectfully dissent on reversing the court of appeals' decision to remand. Respondent should be allowed to file a supplemental affidavit.

Prior to the enactment of Minn.Stat. § 145.682 in 1986,[1] we had used restraint in reviewing the adequacy of pleadings and tried to avoid such harsh summary pretrial dispositions of serious cases on procedural grounds. Now, we seem to be reverting back to code pleading in medical malpractice cases, requiring plaintiffs to initially allege all detailed facts sufficient to prove the cause of action. In fact, we became a notice pleading state when this court promulgated the rules of civil procedure, effective January 1, 1952.[2] Notice pleading under Minn. R. Civ. P. 8.01 mere-

ly "requires a short and plain statement of the claim * * *." We have interpreted this language as only requiring a "broad general statement which may express conclusions," in contrast to code pleading. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 394, 122 N.W.2d 26, 29 (1963). Under both our current rule and the code pleading system, we had preferred to dispose of matters on the merits rather than on technical procedural grounds. *See, e.g.*, Minn. R. Civ. P. 61; *Rees v. Storms*, 101 Minn. 381, 384, 112 N.W. 419, 420 (1907).

We now have used this legislative initiative embodied in Minn.Stat. § 145.682 that dictates the form of pleadings, pre-trial discovery disclosures, court rules and establishes evidentiary requirements to change our long-standing precedent and modify our rules. In doing so, we appear to defer to the legislature on establishing judicial procedures that are inherently in the province of the judiciary. *See, e.g.*, *State v. Johnson*, 514 N.W.2d 551, 553–54 (1994). Recently, in *Holmberg v. Holmberg*, 588 N.W.2d 720, 723–26 (Minn.1999) and *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 137–42 (Minn.1999), we reiterated the importance of maintaining our jurisdiction over court rules and procedures in the context of both separation of powers and our inherent power to establish rules of court and those governing lawyers.

Importantly, Minn.Stat. § 480.051 (1998) specifically grants to the supreme court the power to regulate pleadings, procedures and form in all civil actions. Accordingly, our court rules already cover these issues. We have rules of evidence relating to testimony by experts, disclosure of facts or data underlying expert opinions and even provide for court appointed experts. *See* Minn. R. Evid. 702,

---

**2.** *Lindberg*, 599 N.W.2d at 578 (stating "Dismissal is mandated under Minn.Stat. § 145.682, subd. 6, when the disclosure requirements are not met and, while we certainly recognize that the statute may have harsh results in some cases, it cuts with a *sharp but clean edge.*") (emphasis added).

**1.** *See* Act of March 25, 1986, ch. 455, § 60, 1986 Minn. Laws 871–72.

**2.** *See Pirsig on Minnesota Pleading* §§ 1, 21–23 (4th ed.1956).

703 and 706. We even have rules relating to depositions and discovery of experts, Minn. R. Civ. P. 26.02(d), and provide that such discovery "may be obtained only as follows * * *." *See also* Minn. R. Civ. P. 35.04 (governing medical disclosures and depositions of medical experts). Similarly, we have specific rules regarding summons and complaints in Minn. R. Civ. P. 4.01 and 8.01. In fact, Minn. R. Civ. P. 7.01, which relates to pleadings, defines what is sufficient and provides that "no other pleading shall be allowed, except that a court may order a reply to an answer."

The more pertinent conceptual question may relate to the constitutional separation of powers doctrine. The respondent in this matter did raise some constitutional issues but did not raise a separation of powers challenge to the statute. Nor was the separation of powers issue raised in *Sorenson, Stroud,* or *Lindberg.* Because the issue has neither been briefed nor argued, it should not be considered by the majority. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Nonetheless, this question should give this court pause before adopting the legislature's directives in such a wholesale fashion when this legislation may be at odds with our long established precedent and rules.

Given that we are a notice pleading state and that we have historically preferred to decide cases on their merits, parties should be permitted to reasonably utilize the "good cause shown" exception offered to them by Minn.Stat. § 145.682, subd. 4(b) (1998) to allow more time to correct any perceived errors in their affidavits. The statute was never meant to require plaintiffs in medical malpractice cases to literally try their cases in pre-trial affidavits. I would affirm the court of appeals on the issue of extension of time.