Stewart LINDBERG, as Trustee, for
the heirs and next-of-kin of Lukas
Stewart Lindberg, Respondent,

v.

HEALTH PARTNERS, INC.,
et al., Appellants.

No. C2–98–505.

Supreme Court of Minnesota.

Sept. 2, 1999.

OPINION

STRINGER, Justice.

Respondent Stewart Lindberg, as trustee for the heirs of Lukas Stewart Lindberg, commenced this medical malpractice action against appellants Health Partners, Inc., Group Health Plan, Inc., Sharon Nichols, Donne Mathiowitz, Dr. Ann L. Megas, and GeorgeAnne Del Giudice [1] alleging negligence in failing to instruct his pregnant wife Debra Lindberg to be seen immediately by a physician for examination and treatment and that the alleged negligence caused the stillbirth of Lukas Stewart Lindberg, the decedent. The district court granted summary judgment in favor of the respondents because Lindberg's September 1996 affidavit of expert identification failed to meet the requirements of Minn.Stat. § 145.682 (1998) and there was no showing of excusable neglect to warrant an extension of the statutory deadline to permit consideration of his October 1997 supplemental affidavit. The court of appeals reversed and remanded. We granted review to once again address the strict statutory requirements of Minn. Stat. § 145.682.

The facts in this case are essentially undisputed. In 1993 Ms. Lindberg became pregnant with her fourth child and received prenatal care from Group Health. On March 28, 1994 Ms. Lindberg awoke with what she described as "severe swelling" in her lower legs and called Group Health for medical advice. Donna Mathiowitz, a triage nurse at the clinic, spoke to Ms. Lindberg and after consulting with nurse midwife Sharon Nichols, advised Ms. Lindberg that she did not need to come to the clinic but that she should lay on her left side, eat extra protein, report any new symptoms, and keep her next appointment with the clinic scheduled for three days later.

Terence J. O'Loughlin, Matthew J. Hanzel, St. Paul, for appellants.

James F. Baldwin, Huyen Le Phan, St. Paul, for respondent.

1. The respondent subsequently dismissed Megas and Del Giudice from the lawsuit.

Prior to going to bed that evening Ms. Lindberg felt fetal movement and the baby was active. Early in the morning on March 29, 1994 however, she awoke with severe chest pain, a severe headache, and a tight abdomen. The baby was not moving. She again called Group Health's "baby line" and was advised to lay on her left side, drink juice, and call back in one-half hour. Less than one-half hour later she again called reporting that "things are getting worse." She was then advised to go to Fairview Riverside Hospital immediately. Upon admission to the hospital no fetal heartbeat was detectable and Ms. Lindberg's baby was delivered stillborn.

In March of 1996 respondent commenced a lawsuit against appellants generally alleging that the appellants were negligent in failing to instruct or advise Ms. Lindberg to seek medical treatment and that the alleged negligence caused the stillbirth of the decedent. Respondent attached to the complaint the first of two affidavits required to be filed by the plaintiff pursuant to Minn.Stat. § 145.682.[2] On or about April 10, 1996, appellants served on respondent a set of interrogatories requesting, among other things, identification of his expert, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. Respondent objected to these interrogatories on the ground that they sought privileged information but subject to that objection, stated that the interrogatory answers would be supplemented at some point in the future. The interrogatory answers were never supplemented.

On September 20, 1996, approximately 178 days after commencement of the suit, respondent served the second affidavit required by Minn.Stat. § 145.682, subd. 2(2) in the form of an affidavit of Dr. Stephen H. Cruikshank, a board certified specialist in obstetrics and gynecology. Dr. Cruikshank's affidavit stated:

1. I am a board-certified specialist in obstetrics and gynecology.

2. This affidavit is to explain my opinions in this case pursuant to Minn.Stat. § 145.682.

3. I am familiar with the standard and duty of care applicable to doctors, midwives, nurses and other medical

---

2. **Subd. 2. Requirement.** In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

**Subd. 3. Affidavit of expert review.** The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that:

(a) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff * * *.

**Subd. 4. Identification of experts to be called.**

(a) The [expert] affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. * * *
* * * *

**Subd. 6. Penalty for non-compliance.** Failure to comply with subdivision 2, clause (1), within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

Failure to comply with subdivision 2, clause (2), and subdivision 4 results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

personnel in the Twin Cities of Minnesota area.

4. Based upon a reasonable degree of medical certainty, it is more probable than not, that if, among other things, Debra Lindberg had been instructed to seek medical treatment at the time of her phone call on the morning of March 28, 1994, Lukas Stewart Lindberg would not have died.

5. Based upon a reasonable degree of medical certainty, Lukas Stewart Lindberg died as a result of the negligent and careless conduct of the Defendants and/or their agents and employees, including midwife Sharon Nichols and Donne Mathiowitz.

6. That the opinions contained in this affidavit, are based upon my years as a board certified specialist in obstetrics and gynecology, the review of the medical records concerning Debra Lindberg, my experience in working with patients having similar medical conditions, diagnosis and treatment, and my general familiarity with medical literature.

In August of 1997, over a year after the suit was commenced, appellant moved for summary judgment and dismissal of the complaint based on respondent's failure to serve a legally sufficient affidavit as required by Minn.Stat. § 145.682. In September of 1997, respondents requested and were granted a continuance. At that time Dr. Cruikshank's affidavit dated September 20, 1996 was the only expert affidavit submitted by respondent in support of his claims.

The district court issued a routine scheduling order requiring, among other things, that "[respondent] must disclose all experts by September 1, 1997" but did not reference the 180–day deadline for expert disclosure under Minn.Stat. § 145.682, subd. 4. On October 13, 1997 respondent's counsel requested an amendment to the district court's scheduling order which included extension of the date for the disclosure of expert witnesses but did not request an extension of the 180–day statutory deadline that, by that time, had long since passed. The district court granted an extension for disclosure of experts as well as the date discovery was to be completed to October 31, 1997 but again did so without referencing Minn. Stat. § 145.682.

On that date respondent served a document entitled Supplemental Affidavit of Dr. Cruikshank which included an opinion as to the prevailing standard of care:

> When a patient complains of a headache, swelling of her hands, legs, ankles, eyes, etc., [and] noted no improvement in her condition even though she remained off her feet, and complaining of a headache, the prevailing standards of medical care * * * require the medical personnel to instruct the patient to seek immediate medical attention because such symptoms are early signs of pregnancy-induced hypertension or preeclampsia which is a major cause of maternal and fetal morbidity. Prompt medical attention is necessary in order to monitor the fetus' heartbeat, stress level, and make the ultimate decision as to whether induced labor was necessary to save the life of the fetus.

Dr. Cruikshank further opined that medical attention was necessary in order to conduct tests and monitor Ms. Lindberg's hypertension and therefore failure to direct her to go to the hospital was the direct and proximate cause of the stillbirth. He also rejected the defendants' claims as to the cause of death.

The district court granted the appellants' motions for summary judgment pursuant to Rule 56 and for dismissal of the complaint pursuant to Minn.Stat. § 145.682 on the basis that Dr. Cruikshank's affidavit dated September 20, 1996 failed to meet the disclosure requirements of Minn.Stat. § 145.682 as applied by this court in *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188 (Minn.1990) and more recently in *Stroud v. Hennepin*

*County Med. Ctr.,* 556 N.W.2d 552 (Minn. 1996). The district court also rejected respondent's assertion that he explicitly or implicitly sought to extend the statutory 180–day deadline for expert disclosure prescribed by Minn.Stat. § 145.682, and that the court order extending expert disclosure to October 31, 1997 implicitly extended the 180–day statutory deadline. The court noted that even if such a motion for an extension were made, it would have been denied for lack of good cause as respondent failed to establish excusable neglect.

The court of appeals reversed holding that the September 1996 affidavit was sufficient to meet the statutory requirements despite noting the fact that the statement of the standard of care was the weakest portion of the affidavit. Because the affidavit fulfilled what the court of appeals perceived to be the most important requirement "in that it identifies the expert that appellant intends to use at trial," the court held it was sufficient for purposes of Minn.Stat. § 145.682, and that denying dismissal was consistent with the judicial preference for disposal of cases on their merits. The court rejected the respondent's argument that appellants' failure to question the sufficiency of the September 20, 1996 affidavit established estoppel but noted that the "long delay in acting on the statute tends to suggest that the medical basis for the suit had been sufficiently disclosed to fulfill the purposes of the statute."

The court of appeals ruling is strikingly at odds with the clear legislative purpose expressed in Minn.Stat. § 145.682 and this court's opinions in both *Sorenson* and *Stroud.* In *Sorenson,* decided shortly after the enactment of Minn.Stat. § 145.682, the plaintiffs commenced a medical malpractice action in connection with a stillbirth, a factual setting similar to the case now before the court. *See Sorenson,* 457 N.W.2d at 189. The issue on appeal was whether the substantive disclosure requirements of the affidavit of expert identification in Minn.Stat. § 145.682, subd. 4 were met. *Id.* at 190–91. We noted that in adopting the statute "the legislature contemplated procedural reform directed at elimination of 'frivolous cases,'" and we held that an affidavit containing conclusions such as "the defendants 'failed to properly evaluate' and 'failed to properly diagnose'" were legally insufficient to fulfill the purpose of expert testimony disclosure because it merely stated "empty conclusions which, unless shown how they follow from the facts, can mask a frivolous claim." *Id.* at 191–93. Nonetheless, we held that because of the "unique procedural circumstances of the case" plaintiffs were justified in believing that when defendant withdrew his motion to compel discovery, he was signifying his acceptance of the adequacy of the plaintiff's expert disclosure affidavit. *Id.* at 193. But we issued this clear warning to practitioners that the standard of disclosure in subdivision 4 will be high:

> In cases commencing after this opinion is filed * * * we will expect a more complete disclosure. * * * [P]laintiffs will be expected to set forth, by affidavit or answers to interrogatories, specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them.

*Id.*

More recently in *Stroud,* we again emphasized the importance of strict compliance with the disclosure requirements of the statute as set forth in *Sorenson.* In *Stroud* the plaintiffs commenced a medical malpractice suit alleging failure to diagnose and treat a subarchnoid hemorrhage in a 69–year old woman. *Stroud,* 556 N.W.2d at 553. The issues on appeal were whether the affidavit of expert identification was sufficient as a matter of law and, whether the defendants were estopped from seeking dismissal because they wait-

ed eight months before giving notice to plaintiff of their claims that the affidavit was insufficient under Minn.Stat. § 145.682. *Id.* at 555. The court of appeals ruled that the affidavit, combined with the death certificate, was sufficient to provide a chain of causation of the malpractice and in any event defendants were estopped from seeking dismissal because they failed to inform plaintiff of their belief that the affidavit was insufficient. *Id.* We reversed, holding that the expert disclosure affidavit did not meet the requirements of Minn.Stat. § 145.682, subd. 4 because it provided "only broad and conclusory statements as to causation" and failed to "provide an outline of the chain of causation between the alleged violation of the standard of care and the claimed damages." *Id.* at 556. We specifically rejected the court of appeals analysis that the death certificate read in conjunction with the expert affidavit was sufficient stating that they are "not a substitute for an expert medical opinion setting forth in detail the causal connection * * * because it does not provide any explanation of how the conduct led to * * * death." *Id.* We also rejected the court of appeals estoppel theory as an alternate grounds for avoiding dismissal when we stated "[i]n fact, such a conclusion is clearly contrary to the plain language of Minn.Stat. § 145.682, subd. 6, which mandates dismissal, upon motion, after expiration of the 180–day period for plaintiff's failure to comply with Minn.Stat. § 145.682, subd. 4." *Id.* at 557.

Respondent advances several arguments to support his claim that his September 20, 1996 affidavit of expert identification is sufficient: that it clearly sets forth the applicable standard of care as evidenced by appellants' ability to retain two expert witnesses to rebut Dr. Cruikshank's medical opinions and that these expert witnesses were able to prepare detailed reports based on the affidavit; that the 1996 affidavit contained a detailed chain of causation because it states that "failure to instruct Ms. Lindberg to seek prompt medical attention * * * caused the death of L. Lindberg" and that *Sorenson* requires only "general disclosure." Respondent also argues that even assuming the 1996 affidavit is insufficient, the district court abused its discretion in dismissing the medical malpractice claim because appellants failed to prove that respondent's lawsuit is frivolous or that they have been prejudiced by the alleged deficiencies; that appellants are estopped from seeking a dismissal pursuant to Minn.Stat. § 145.682 because for 11 months the appellants did not request additional medical evidence needed to evaluate the lawsuit; and that the district court abused its discretion in denying respondent's request to extend the 180–day time limit because respondent established "excusable neglect." [3]

■ The requirements of Minn.Stat. § 145.682 are uncomplicated and unambiguous, and in *Sorenson* and *Stroud* we provided additional clarity as to what information the affidavit of expert identification must contain in order to meet the statutory requirements of subdivision 4 and avoid mandatory dismissal. At a minimum, the affidavit or answers to interrogatories must disclose "specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation" between the violation the standard of care and the plaintiff's damages. *Sorenson,* 457 N.W.2d at 193.

■ We agree with the district court's holding that respondent failed to file a sufficient affidavit within the 180–day deadline and that failure to comply results in mandatory dismissal upon motion. *See*

3. Respondent raises the additional argument that the district court abused its discretion in denying his request to vacate the November 28, 1997 order on the basis that the judgment was obtained due to an attorney's neglect citing to Minn. R. Civ. P. 60.02. The respondent did not seek conditional review of this issue and because it is not necessary to the disposition of this case we will not address its merits.

Minn.Stat. § 145.682, subds. 4(b), 6. It is clear that Dr. Cruikshank's Sept. 20, 1996 affidavit contains nothing more than broad and conclusory statements as to causation. *See Stroud,* 556 N.W.2d at 556 (emphasizing that affidavits of expert identification must outline the chain of causation in order to meet the statutory requirements). It states that Dr. Cruikshank is familiar with the applicable standard of care but fails to state what it was or how the appellants departed from it, it fails to recite any facts upon which Dr. Cruikshank will rely as a basis for his expert opinion, it fails to outline a chain of causation connecting the alleged failure to instruct Ms. Lindberg to seek immediate medical attention with the stillbirth of the decedent and it fails to even identify the medical condition for which Ms. Lindberg allegedly was not given attention.

▮ The statutory disclosure requirements compel our focus to be on the adequacy of the expert disclosure, either by affidavit or interrogatory answers, as we have interpreted Minn.Stat. § 145.682 in both *Sorenson* and *Stroud.* The statute requires far more information than simply identification of the expert intended to be called at trial or a "general disclosure" as respondent argues, and non-affidavit materials, absence of prejudice to defendant, failure of defendant to prove plaintiff's claim is frivolous or failure of defendant to alert plaintiff to the inadequacy of the affidavit of expert identification will not excuse or justify an affidavit of expert identification falling short of the substantive disclosure requirement. The statute provides for no such exception and it is not for the courts to read into a clear statutory scheme something that plainly is not there.

Dismissal is mandated under Minn.Stat. § 145.682, subd. 6 when the disclosure requirements are not met and while we certainly recognize that the statute may have harsh results in some cases, it cuts with a sharp but clean edge. It is the legislative choice to implement the policy of eliminating frivolous medical malpractice lawsuits by dismissal. A showing of good cause for an extension of the 180–day time limit pursuant to Minn.Stat. § 145.682, subd. 4(b) may justify relief from the mandatory filing time required under the statute, but failing that, the statute compels dismissal for failure to timely file the required disclosure. *See* Minn.Stat. § 145.682, subd. 6.[4]

▮ We now turn to the last argument made by respondent that the trial court abused its discretion in denying his request to extend the 180–day time limit for excusable neglect pursuant to Minn.Stat. § 145.682, subd. 4(b). Respondent argues that the fact that the district court extended the discovery deadline for disclosure of experts to October 31, 1997 justifies a conclusion that the district court also extended the 180–day deadline established by Minn.Stat. § 145.682, and that Dr. Cruikshank's Supplemental Affidavit filed on that date met the statutory requirements. We hold that the trial court did not err in rejecting this contention. The record demonstrates that the respondent never requested an extension of the statutory deadline under Minn.Stat. § 145.682 for "good cause shown" and it is not reasonable to assume that the court implicitly granted an extension. In fact, the district court ruled that even if the request for an extension of the discovery deadline was

4. The dissent, while conceding that respondent's expert affidavit was inadequate, relies principally on *Sorenson* in concluding that the trial court erred in not considering the lack of prejudice to appellant and a less drastic alternative to dismissal. Obviously there is prejudice to appellant in not being informed of the substance of respondent's claims until more than a year after suit was filed, and of course being denied the dismissal to which respon-

dent was entitled pursuant to Minn.Stat. § 145.682. In any event, the result urged by the dissent cannot be reached without overruling our recent decision in *Stroud,* a step we are unwilling to take given the strong statutory mandate of dismissal for failure to comply with the disclosure requirements. *Stroud* makes clear the correctness of the trial court dismissal and the dissent's misguided analysis.

considered to be a motion to extend the time limits of Minn.Stat. § 145.682 for good cause, it would be denied for failure to show good cause or excusable neglect. Accordingly, the district court did not abuse its discretion in refusing to consider the supplemental affidavit of Dr. Cruikshank.

Reversed and summary judgment reinstated.

PAUL H. ANDERSON, Justice (concurring specially).

I concur in the result reached by the majority, but write separately because of my concern about the implications of certain aspects of the majority opinion. I do not find the application of Minn.Stat. § 145.682 "uncomplicated and unambiguous" as does the majority. Nor do I conclude that the statute cuts with "a sharp but clean edge." Arguably, the future implications of the majority's language will be decisions much more harsh than the result that we reach in the case before us today.

The dissent is correct to express concern about the implications of today's opinion, and more particularly, to point out that the majority fails to acknowledge our direction in *Sorenson* for courts to use measures less drastic than procedural dismissal in those borderline cases where there has been some meaningful disclosure and there is an absence of prejudice. *See Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn.1990). It is important that we continue to acknowledge there are borderline cases where the application of the statute will not be uncomplicated and unambiguous and where the border will be indeterminate rather than sharp and clean. In those cases, we must continue to evaluate the degree of prejudice caused by inadequate disclosures and in those borderline cases where prejudice is absent, apply less drastic alternatives than procedural dismissal. This approach preserves "the primary objective of the law [ ] to dispose of cases on the merits." *Id.* at 192.

The case before us, however, is not one of those borderline cases. Contrary to the contention of the dissent, the medical affidavit provided by Lindberg in support of his claim falls substantially short of what is required by the statute. Therefore, the district court was correct to dismiss this action. While this is a harsh result, especially in light of the personal tragedy suffered by the Lindberg family, nevertheless, it is a result mandated by the law based on the record before us.

GILBERT, Justice (concurring in part and dissenting in part).

I concur in part and dissent in part from the majority's decision. I believe the trial court abused its discretion in dismissing the medical malpractice claims against the appellants. The trial court and the majority disregarded our directive to carefully evaluate the degree of prejudice suffered by appellants and failed to consider less drastic alternatives to dismissal as discussed in *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188 (Minn.1990). There we held:

> In deciding whether a procedural dismissal should be granted, the trial court should carefully evaluate the degree of prejudice to the defendant caused by the inadequate disclosures. *In borderline cases where counsel for a plaintiff identifies the experts who will testify and give some meaningful disclosure of what the testimony will be, there may be less drastic alternatives to a procedural dismissal.* In these instances, the court may authorize a deposition of the expert at the plaintiff's expense or limit the expert's testimony to those matters adequately disclosed. These measures would encourage full disclosure and eliminate the prejudice suffered by a defendant as a result of an inadequate disclosure.

*Id.* at 193. (internal citations omitted)(emphasis added).

In *Sorenson*, we applied our analysis relating to the discovery rules in interpreting Minn.Stat. § 145.682. *See Sorenson*, 457 N.W.2d at 193; *Dennie v. Metropolitan Med. Ctr.*, 387 N.W.2d 401 (Minn. 1986). This application was consistent with our other decisions holding that procedural dismissal is not to be favored over "the primary objective of the law [ ] to dispose of cases on the merits." *Sorenson*, 457 N.W.2d at 192. In *Dennie*, the court noted that expenses and time delays which could adequately be addressed by less drastic measures would not justify dismissal. 387 N.W.2d at 405. The court further noted that "[t]he defense has the burden of showing particular prejudice of such a character that some substantial right or advantage will be lost or endangered if plaintiff is permitted to dismiss and reinstitute the action." *Id.* (quoting *Firoved v. General Motors Corp.*, 277 Minn. 278, 283–84, 152 N.W.2d 364, 368 (1967). In that case, the court found no prejudice where the issue was clear and where "[i]t would not be difficult for defendant to anticipate the expert's testimony and prepare its cross-examination." *Id.* at 406.

This case is analogous to the facts in *Dennie*. While I concur that the expert affidavit was inadequate, it supplied much more information than the expert affidavits we found to be deficient in the past. *See, e.g., Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 554 (Minn.1996). This affidavit not only identified the expert but also contained a summary of the facts and opinion, including the causation requirement, to which the expert was expected to testify. What concerns me is that the appellants submitted no evidence or arguments that this affidavit prejudiced them in any way. In fact, the medical affidavit in issue supplied enough information for the appellants to fully anticipate the respondent's expert's testimony and prepare for cross-examination. Appellants

retained two experts who thoroughly critiqued and criticized the affidavit of respondent's medical expert. There is now a factual dispute. The quality of the affidavit may have justified taking the deposition of the expert at respondent's expense or limiting the respondent's expert testimony to the matters that were disclosed, but does not justify a summary dismissal.

This was not the "frivolous litigation" that Minn.Stat. § 145.682 (1998) was intended to remedy, rather it is one of those borderline cases where counsel retained a qualified expert and made a good faith effort to disclose meaningful information of what the expert testimony would be. The allegations of medical malpractice relating to the stillborn fetus are supported by an affidavit of a board-certified specialist in obstetrics and gynecology who reviewed the relevant medical records. The record also contains an unobjected to affidavit of plaintiff's attorney. Rather than dealing such a harsh result under these unique facts and order a procedural dismissal, a less drastic alternative should have been utilized by the trial court.

In the majority's zeal to establish this new "sharp but clean edge" standard, it ignored (without overruling) our reasoned discussion in *Sorenson* and the wisdom of using less drastic measures where there is an absence of prejudice.[1] Accordingly, I would affirm the court of appeals.

---

1. The prejudice issue was not addressed in the only other case cited by the majority, *Stroud,* 556 N.W.2d 552.