# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2222

_____

Patricio Flores; Jose Encalada, as Co-Trustees and Personal Representatives for the next-of-kin of Maria Iñamagua Merchan

*Plaintiffs - Appellants*

v.

United States of America; U.S. Department of Homeland Security, Immigrations and Customs Enforcement ("ICE"); Scott Baniecke, individually and in his official capacity as Field Officer, ICE; Unknown Number of Unnamed and Unknown Agents of ICE; County of Ramsey, Minnesota; Robert Fletcher, individually and in his official capacity as Sheriff of Ramsey County; Ramsey County Adult Detention Center; Ramsey County Sheriff's Department; Ramsey County Department of Health; Robert W. Fulton, Director of Ramsey County Department of Health; "XYZ" Family Practice Clinic, Ramsey County Adult Detention "Family Practice Clinic" and Unidentified Medical Clinics I-V; Drs. John or Jane Does I-V, Unidentified Jail or Contract Medical Doctors; Robert Moxley-Goldsmith, individually and in his capacity as Head Nurse; R.N. Ericka Thompson, individually and in her capacity as Jail Nurse; Chris Strand, individually and in her capacity as Jail Nurse; Kelli LNU, Unidentified Jail Nurse; John or Jane Roe, Unidentified Jail Nurses I-V; Mary Roby, individually and in her capacity as Ramsey County Housing Sergeant; Jill Jones, individually and in her capacity as Ramsey County Corrections Officer; T. Bennet, individually and in his capacity as Ramsey County Corrections Officer; Cheryl Caumiant, individually and in her capacity as Ramsey County Corrections Officer; John or Jane Poes I-V

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2012
Filed: August 20, 2012
_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Maria Iñamagua Merchan, an Ecuadorean woman, died on April 12, 2006, while in custody awaiting deportation. Her husband, Patricio Flores, and her uncle, Jose Encalada, (plaintiffs) filed suit against several defendants, alleging state law tort claims and violations of Iñamagua's federal constitutional rights. Following lengthy, complicated pretrial proceedings, the district court[1] dismissed the case and entered final judgment against plaintiffs.

Plaintiffs appeal from the adverse judgment, arguing that the district court erred in dismissing their medical malpractice claim for failure to timely comply with certain filing requirements and in dismissing their Federal Tort Claims Act (FTCA) claim for lack of jurisdiction. Plaintiffs further argue that they set forth sufficient evidence to survive summary judgment on their claims of constitutional violations. We affirm.[2]

_____

[1]This case involved the following district and magistrate judges from the District of Minnesota: The Honorable James M. Rosenbaum, now retired, and the Honorable Ann D. Montgomery, United States District Judges; the Honorable Susan Richard Nelson, then United States Magistrate Judge; and the Honorable Janie S. Mayeron and the Honorable Steven E. Rau, United States Magistrate Judges.

[2]We have considered and now deny plaintiffs' motion to supplement the appellate record.

## I.  Background

### A.  Factual Background

Iñamagua was arrested in Minneapolis, Minnesota, as a deportable alien on February 24, 2006.  An Immigration and Customs Enforcement (ICE) agent questioned Iñamagua in Spanish, her only language, and asked if she had any health concerns or medications.  She did not indicate any.  Pursuant to an intergovernmental agreement, Iñamagua was transferred to Ramsey County Adult Detention Center (Detention Center) to await removal proceedings.  Although ICE standards require a physical examination within fourteen days of a detainee's arrival at a facility, Iñamagua was not examined.

On March 5, 2006, Iñamagua submitted an Inmate Medical Request Slip, which stated that she "want[ed] to see the Doctor because I have migrane [sic] headaches and Tylenol or Asprin [sic] don't do anything for me."  According to the doctor's progress notes, Iñamagua was seen by a doctor the next day.  The doctor, later identified as Dr. Greg Salmi, diagnosed Iñamagua as suffering from muscle contractions and prescribed a pain reliever and muscle relaxant.  Iñamagua later submitted another slip, which indicated that she had a rash and that the lotion she had been given did not help. On March 23, Nurse Chris Strand evaluated Iñamagua's lower extremities and diagnosed it as a rash "secondary to pant uniform rubbing on skin."  Strand advised Iñamagua to wear long underwear or wash her pants in Dreft soap.  She also prescribed Benadryl and hydrocortisone cream. Progress notes indicate that on March 31, 2006, Iñamagua complained again of the rash, which was now on her arms and lower extremities.  Nurse Erica Thompson prescribed Benadryl and ibuprofen.

Iñamagua fell from the top bunk bed in her cell on April 3, 2006.  At 2:30 p.m., Iñamagua's roommate called Correctional Officer Cheryl Caumiant to the cell. When Caumiant arrived, Iñamagua was holding her head between her hands, crying.

According to Caumiant's report, "Iñamagua Merchan had complained of a bad headache all day and had retired to her cell early to lay down." Caumiant inspected Iñamagua's head and discovered a "small lump on the back of it, no cuts or bleeding." Caumiant gave Iñamagua an ice pack and a cold washcloth. Thereafter, Caumiant called the nurse and explained what happened. According to Nurse Thompson's April 3, 2006, progress notes, at 4:00p.m.,

> Inmate came to the window during med rounds crying hysterically. Per interpreter inmate fell off top bunk and hit back of head at 1430. Inmate presents . . . ½ golf ball sized lump on back of head. 0 O/As. Inmate [complained of] nausea. Denies vomiting. [Complained of headache] and dizzyness [sic]. At 0x3. Inmate however confused when returning to cell (walked the wrong way down the hall). Hand grasps equal, strong. Pupils PERRLA. Ibuprofen + ice pack given. Memo sent to pod to awaken inmate Q2∘ for 24∘ and if appears confused or is unable to easily arouse to call nurse or send to Regions.

Thompson's notes indicate that at 7:30 p.m. that evening, she again saw Iñamagua in her pod. Iñamagua was unable to walk to Thompson. Iñamagua's complexion was pale and she had purple coloration under her eyes. She was not responsive to commands, her hand grasps were not equal, and she had been vomiting. Nurse Mary Logan (identified as Nurse Kelly) also assessed Iñamagua's condition and checked her vital signs. Following their evaluation, Iñamagua was sent to the emergency room at Regions Hospital (Regions). The progress notes indicate that at 9:00 p.m., Regions reported that a CT scan showed "something" and that Regions planned to intubate Iñamagua and complete another CT scan. Regions further reported that Iñamagua was not responsive to voice commands. Iñamagua remained hospitalized and died on April 12, 2006, from neurocysticercosis, a tapeworm infestation that causes cysts in the brain and central nervous system.

## B. Procedural Background

Two days before Iñamagua's death, plaintiffs' attorney Christopher Walsh requested records from Ramsey County relating to Iñamagua's detention. Walsh reiterated his request on August 25, 2006. That same day, a Ramsey County claims administrator responded by forwarding copies of several documents, including the nurses' progress notes detailed above. On April 2, 2007, Walsh sent a third letter, notifying the claims administrator of "Mr. Flores' legal claims for damages regarding the wrongful death of his wife." Walsh sent no further letters until April 6, 2009, when he wrote to the claims administrator and listed certain documents that Ramsey County had failed to produce. Six additional pages of medical records were provided to Walsh on May 4, 2009.

On April 21, 2008, the Department of Homeland Security (DHS) received an administrative tort claim from plaintiffs. On October 9, 2008, the DHS denied the claim as untimely and sent notification to plaintiffs' attorney.

On April 10, 2009, plaintiffs filed suit in federal district court, alleging six counts against a number of defendants.[3] Relevant to this appeal are plaintiffs' state-law claim for medical malpractice and their federal causes of action under the FTCA, 42 U.S.C. § 1983, and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of</u>

---

[3]We will refer to the defendants as the Federal defendants, the Ramsey County defendants, and the Advance Practice Solution (APS) defendants. The Federal defendants are the United States of America, the DHS, Immigration and Customs Enforcement (ICE), and ICE agent Scott Baniecke. The Ramsey County defendants are Ramsey County, Sheriff Robert Fletcher, Ramsey County Adult Detention Center, Ramsey County Sheriff's Department; Ramsey County Department of Health, and individuals Robert W. Fulton, Robert Moxley-Goldsmith, R.N. Erika Thompson, Chris Strand, Kelli LNU, Mary Roby, Jill Jones, T. Bennet, and Cheryl Caumiant. The APS defendants are Advance Practice Solutions and Dr. Salmi. The complaint also included allegations against a number of unnamed defendants.

Narcotics, 403 U.S. 388 (1971). Plaintiffs' medical malpractice claim was dismissed for failure to timely file certain expert affidavits that are required under Minnesota law. The FTCA claim was dismissed because plaintiffs failed to file their administrative claim within two years after the claim had accrued, thus depriving the district court of jurisdiction to hear the dispute. The district court held that the individual Federal defendants were entitled to qualified immunity on the Bivens and § 1983 claims and dismissed the § 1983 claim against the remaining defendants because they were acting under federal, not state law. Following early dispositive motions, the Federal defendants and a number of the Ramsey County defendants were dismissed from the suit.[4]

The APS defendants and the remaining Ramsey County defendants later moved for summary judgment on the Bivens claim. With respect to the APS defendants, the magistrate judge determined that the Bivens action should be dismissed because such actions do not extend to private actors like Dr. Salmi and Advance Practice Solutions when adequate state tort remedies are available. Even if the Bivens action could be maintained, the magistrate judge found that plaintiffs "produced no evidence of deliberate indifference to decedent's serious medical needs." Report and Recommendation of Nov. 29, 2010, at 25. The magistrate judge's report and recommendation was adopted in its entirety.

The district court likewise granted summary judgment in favor of the remaining Ramsey County defendants on the Bivens claim. The magistrate judge identified

---

[4]Defendants Roby, Jones, and Bennet were dismissed because Plaintiffs failed to serve process on them within the time limits set forth in Federal Rule of Civil Procedure 4. The Ramsey County Sheriff's Department, the Ramsey County Adult Detention Center, and the Ramsey County Department of Public Health were dismissed because they are not legal entities capable of being sued. The FTCA claim and the state law tort claims against the Ramsey County Defendants, as well as the Bivens claim against the sheriff and Robert Fulton, were also dismissed.

Moxley-Goldsmith, Logan, and Jane Berg as defendants who had not treated Iñamagua and determined that plaintiffs had failed to allege in their complaint or disclose through discovery any direct involvement by the non-treating defendants. The magistrate judge further concluded that plaintiffs had failed to set forth sufficient evidence to show that the treating defendants—Caumiant, Strand, and Thompson—had deliberately disregarded Iñamagua's serious medical needs. The magistrate judge also determined that plaintiffs had failed to establish a violation of Iñamagua's equal protection rights. The district court adopted the magistrate judge's report and recommendation and entered judgment against plaintiffs.

## II. Discussion

### A. Jurisdiction

Given the number of defendants, claims, reports and recommendations, and orders in this case, we asked counsel to submit supplemental briefs regarding our jurisdiction to hear this appeal. Based upon our review of the record and plaintiffs' counsel's representation that final judgment dismissing all claims against all defendants has been entered, we are satisfied that we have jurisdiction over the appeal. See 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .").

### B. Medical Malpractice Claim

As mentioned above, the district court dismissed plaintiffs' malpractice claim for failure to timely serve expert affidavits as required under Minnesota Statutes section 145.682. In a malpractice action against a health care provider in which "expert testimony is necessary to establish a prima facie case," the plaintiff must serve two affidavits of expert review on the defendant at designated times. § 145.682 subd. 2. The first must be served simultaneously with the summons and complaint. Id. The

second must identify the experts to be called and must be served "within 180 days after commencement of the suit[.]" § 145.682 subds. 2, 4. Minnesota courts require strict compliance with the procedural requirements set forth in section 145.682. Broehm v. Mayo Clinic Rochester, 690 N.W.2d 721, 726 (Minn. 2005) (citing Lindberg v. Health Partners, Inc., 599 N.W.2d 572, 577-78 (Minn. 1999)).

A plaintiff's failure to provide an expert affidavit may be excused only if: (1) expert testimony is not needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits. See Minn. Stat. § 145.682 subd. 2 (requiring expert affidavits when "expert testimony is necessary to establish a prima facie case"); § 145.682 subd. 4 (allowing the court to extend section 145.682's time limits "for good cause shown"); see also Stern v. Dill, 442 N.W.2d 322, 324 (Minn. 1989) (holding that the time for serving the affidavits required under section 145.682 may be extended upon a showing of excusable neglect). Otherwise, the consequence of noncompliance is dismissal of the claim with prejudice. Minn. Stat. § 145.682 subd. 6.

We conclude that the district court properly dismissed the malpractice claim for failure to comply with Minnesota Statutes section 145.682 and that the magistrate judge did not abuse her discretion in denying plaintiffs' motion to extend deadlines to serve expert affidavits. See Stowell v. Huddleston, 643 F.3d 631, 633 (8th Cir. 2011) (reviewing the district court's interpretation of Minnesota statutes § 145.682 *de novo*); Elder-Keep v. Aksamit, 460 F.3d 979, 987 (8th Cir. 2006) (reviewing the denial of a motion to extend deadlines for abuse of discretion). The lawsuit was commenced on April 10, 2009, when plaintiffs filed the complaint, the service of which did not include the required affidavit of expert review. The second affidavit—the affidavit of expert identification—was due 180 days later, on October 7, 2009. Plaintiffs did not file any affidavit purporting to satisfy either of the two affidavit requirements until the filing of an affidavit from Dr. Allan Ingenito on November 24, 2009, and an affidavit from Nurse Shelley Bhola on December 17,

2009, both of which were untimely under section 145.682. Plaintiffs have failed to show any excusable neglect for their failure to comply with the statute's time limits. Despite plaintiffs' arguments to the contrary, they possessed sufficient medical records and information to obtain the expert affidavits and serve them in a timely manner. Dismissal of plaintiffs' malpractice claim thus was mandated under Minnesota Statutes section 145.682.

## C. Federal Torts Claims Act

Plaintiffs also appeal from the district court's order granting the Federal defendants' motion to dismiss plaintiffs' FTCA claim for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). We review *de novo* the question of subject matter jurisdiction. Allen v. United States, 590 F.3d 541, 544 (8th Cir. 2009). To the extent that the district court must resolve factual disputes to determine whether it has jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). If the district court does so, "the appellate court must then review those findings under the 'clearly erroneous' standard." Id.

The district court adopted the magistrate judge's recommendation that the court was without jurisdiction to hear the FTCA claim because plaintiffs had failed to timely file their administrative claim with the DHS. "A federal district court does not have jurisdiction over an FTCA claim unless it was 'first . . . presented to the appropriate federal agency . . . within two years of when the claim accrued.'" Allen, 590 F.3d at 544 (quoting Walker v. United States, 176 F.3d 437, 438 (8th Cir. 1999) (per curiam)); see 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). The magistrate judge found that plaintiffs' claim accrued on April 12, 2006, the date of Iñamagua's death. Because

the DHS received plaintiffs' administrative claim more than two years later, on April 21, 2008, the magistrate judge concluded that the claim was untimely.

Plaintiffs argue that the magistrate judge erred in determining the date the cause of action accrued. They contend that—at the earliest—the claim accrued in August 2006, when Ramsey County provided certain medical records. Under the FTCA, a cause of action generally accrues when the plaintiff is injured, "but might not accrue until the plaintiff knows or reasonably should know of both an injury's existence and its cause." Garza v. United States Bureau of Prisons, 284 F.3d 930, 934 (8th Cir. 2002) (internal citations omitted). We have said that in a wrongful death case "it is fair for the claim to accrue at the time of death." Clifford by Clifford v. United States, 738 F.2d 977, 980 (8th Cir. 1984).

The magistrate judge did not clearly err in finding that plaintiffs' claim accrued upon Iñamagua's death. By that time, plaintiffs had retained an attorney and had demanded records from Ramsey County. In his April 10, 2006, letter, plaintiffs' attorney advised Ramsey County that he represented Flores and explained that Iñamagua had complained of headaches and lost weight while detained, that she had fallen out of her bunk and thereafter displayed symptoms of a head injury, and that Detention Center staff observed her for four hours before she was transferred to a hospital. Plaintiffs thus knew of Iñamagua's injury and reasonably should have known of its cause in the days following her April 3, 2006, hospitalization. The information available to them on April 12, 2006, was sufficient to form the factual basis of plaintiffs' administrative claim, which generally alleged that the Federal defendants had caused Iñamagua's death by failing to provide her with medical care and treatment during her detention and by failing to provide her with immediate medical attention after she fell from her bunk. The magistrate judge thus did not err

in determining that a claim accrued on April 12, 2006, and that plaintiffs' had failed to present their claim within two years of its accrual.[5]

We find unpersuasive plaintiffs' argument that their FTCA claim should have been equitably tolled. Assuming that the equitable tolling doctrine is applicable in this case, plaintiffs did not exercise diligence in preserving their legal rights. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (concluding that the principles of equitable tolling "do not extend to what is at best a garden variety claim of excusable neglect"). Accordingly, the district court properly dismissed the FTCA claim for lack of jurisdiction.

## D. Section 1983 Claim

Although plaintiffs claim to appeal from the orders dismissing their § 1983 cause of action, they have not alleged error in the district court's determinations (1) that the defendants were acting under color of federal law, not state law, and (2) that the Federal defendants are entitled to qualified immunity.

## E. Bivens Claim

Plaintiffs appeal from the district court's order granting summary judgment in favor of the defendants on their constitutional claims brought under Bivens, in which the Supreme Court recognized an implied right of action for damages arising from

---

[5]Even if the administrative claim had been timely filed, plaintiffs have failed to meet two additional FTCA requirements: presentment and filing of the civil action within six months of the date of mailing of the notice of final denial by the DHS. 28 U.S.C. § 2675(a) (presentment requirement); § 2401(b) (six month statute of limitations); see Mader v. United States, 654 F.3d 794 (8th Cir. 2011) (en banc) (holding that the FTCA's presentment requirement is jurisdictional and that the claimant must present evidence of his or her authority to present the claim on behalf of the beneficiaries).

constitutional violations committed by officials acting under color of federal law. 403 U.S. at 389.

We review *de novo* the district court's grant of summary judgment, viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Rakes v. Life Investors Ins. Co. of Am., 582 F.3d 886, 893 (8th Cir. 2009). Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). After the moving party has made and supported its motion, the nonmoving party must produce enough evidence so that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

1. Federal Defendants

Plaintiffs contend that the individual Federal defendants are subject to liability under Bivens for violating Iñamagua's rights to due process, to equal protection, and to be free from cruel and unusual punishment. The district court held that the individual Federal defendants were entitled to qualified immunity, a defense that plaintiffs failed to rebut in their briefs before the district court. As they did below, plaintiffs have not addressed the qualified immunity defense or pointed to any evidence to support their claim that the individual Federal defendants violated Iñamagua's constitutional rights. We thus affirm the order dismissing the Bivens action against the Federal defendants.

## 2. APS Defendants

In recommending that summary judgment be granted to the APS defendants on plaintiffs' <u>Bivens</u> claim, the magistrate judge addressed "whether decedent's representatives may pursue a <u>Bivens</u> action against a private physician employed by a private corporation that has contracted with the government to provide medical services to prison inmates." Report and Recommendation of Nov. 29, 2010, at 12. The magistrate judge considered the circuit split on the issue, noting that this circuit had not yet addressed the question, and concluded that "a <u>Bivens</u> action should not extend to private employees of federal prisons where state tort law already provides a remedy." <u>Id.</u> at 16-17; <u>see</u> <u>id.</u> at 13 (comparing <u>Pollard v. The Geo Grp., Inc.</u>, 607 F.3d 583 (9th Cir. 2010) (permitting an Eighth Amendment <u>Bivens</u> action against privately operated federal prison); with <u>Alba v. Montford</u>, 517 F.3d 1249 (11th Cir. 2008) (rejecting Eighth Amendment <u>Bivens</u> action against privately operated federal prison); and <u>Holly v. Scott</u>, 434 F.3d 287 (4th Cir. 2006) (same)). The magistrate judge concluded that alternative remedies were available to plaintiffs in the form of state tort law and that a <u>Bivens</u> action should not be allowed.

After final judgment was entered, the Supreme Court resolved the circuit split in <u>Minneci v. Pollard</u>, 132 S. Ct. 617 (2012). The Court held that it could not "imply the existence of an Eighth Amendment-based damages action (a <u>Bivens</u> action) against employees of a privately operated federal prison" because "state tort law authorizes adequate alternative damages actions[.]" <u>Id.</u> at 620. In light of the holding in <u>Minneci</u>, plaintiffs cannot maintain a <u>Bivens</u> action against Dr. Salmi and APS—a private citizen and a private corporation—because Minnesota law provides adequate alternative tort actions, including a wrongful death claim based on medical malpractice.

-13-

### 3. Ramsey County Defendants

Plaintiffs contend that the district court made credibility determinations and failed to view the evidence in the light most favorable to them when it dismissed the deliberate-indifference <u>Bivens</u> claim against officer Caumiant, and nurses Strand, Thompson, Logan, and Moxley-Goldsmith.[6] To establish deliberate indifference to serious medical needs, plaintiffs must show (1) an objectively serious medical need; and (2) the defendants actually knew of the need but deliberately disregarded it. <u>Carpenter v. Gage</u>, No. 11-2091, 2012 WL 3052832, at *5 (8th Cir. July 27, 2012). "Deliberate indifference includes something more than negligence but less than actual intent to harm, it requires proof of a reckless disregard of the known risk." <u>Holden v. Hirner</u>, 663 F.3d 336, 341 (8th Cir. 2011) (quotations, alteration, and citation omitted).

Plaintiffs failed to submit evidence to contradict the Ramsey County defendants' testimony that they were unaware of Iñamagua's serious medical need. During her detention, Iñamagua's symptoms included persistent headaches and skin rashes, and she was treated for the less serious conditions those symptoms might reflect. After Iñamagua fell from her bunk, Caumiant and Thompson assessed her condition, treating her for the lump on the back of her head. When Iñamagua's condition deteriorated after the fall, she was transported by ambulance to the hospital, where her life-threatening condition of neurocysticercosis was diagnosed. There was

---

[6]Plaintiffs also listed Jones as a defendant against whom their claim should have survived. Jones, however, was dismissed from the case because plaintiffs failed to serve her with the complaint. Plaintiffs have not appealed that ruling. The magistrate judge listed Logan as a non-treating defendant. Viewing the facts in the light most favorable to plaintiffs, the nurses' progress notes seem to indicate that Logan assessed Iñamagua on April 3, 2006, immediately before Iñamagua was transferred to the hospital.

no evidence that Caumiant, Strand, Thompson, Logan, or Moxley-Goldsmith knew how seriously ill Iñamagua was.

Plaintiffs argue that the district court should have considered the affidavits of Kayla Nygren and Quinn Henson, two inmates housed at the Detention Center during Iñamagua's confinement there. Plaintiffs attempt to rely on those affidavits to show that Iñamagua's serious medical need was obvious. Those affidavits, however, were submitted well after the magistrate judge recommended that the summary judgment motion be granted and after the deadline had passed for objecting to the report and recommendation. In light of these circumstances, the district court did not abuse its discretion in denying plaintiffs' "Motion to Accept Documents." Based on the record before the district court, no reasonable jury could return a verdict in favor of plaintiffs on this claim, and thus the district court properly granted summary judgment in favor of the Ramsey County defendants.

### 4. Equal Protection

Plaintiffs have also failed to identify any factual support for their claim that the defendants violated Iñamagua's right to equal protection. We thus affirm the district court's ruling on this issue.

### F. Discovery and Pretrial Rulings

Plaintiffs ask that we "reverse the lower court's discovery and pretrial rulings which affected the judgments of dismissal of all claims." Appellant's Br. 64. "Our review of a district court's discovery rulings is both narrow and deferential. We will grant relief on the basis of erroneous discovery rulings only where the errors amount to a gross abuse of discretion resulting in fundamental unfairness." Sallis v. Univ. of Minn., 408 F.3d 470, 477 (8th Cir. 2005) (internal quotations, alterations, and citations omitted).

Plaintiffs argue that the magistrate judge erred in finding that they were not diligent in seeking discovery. They claim that the defendants' dispositive motions were submitted "*before* the completion and filing of 90% of the discovery conducted below." Appellant's Br. 37. Their appellate brief then relies heavily on the untimely filed affidavits of Dr. Ingenito, nurse Bhola, and inmates Nygren and Henson.

Having reviewed the record and considered plaintiffs' arguments, we find no abuse of discretion in the detailed rulings of the magistrate and district judges. In two reports and recommendations, Magistrate Judges Nelson and Rau provided an exhaustive procedural time line, setting forth plaintiffs' counsel's failure to meet deadlines and pursue discovery, as contemplated by the Federal Rules of Civil Procedure. See Report and Recommendation of Mar. 22, 2011, at 4-8; Report and Recommendation of Apr. 1, 2010, at 12-14. The Rules contemplate that parties will move for summary judgment before discovery closes, and they provide procedures for the nonmovant to dispute facts and pursue facts that are unavailable to the nonmovant. See Fed. R. Civ. P. 56. Counsel failed to utilize those procedures or to complete discovery in a timely manner. His failure to do so can be neither overlooked nor excused by the circumstances of Iñamagua's untimely death or the gravity of this litigation. See D. Ct. Order of Aug. 12, 2010, at 2-3.

## III.  Conclusion

The judgment dismissing all claims against all parties is affirmed.

_____